and the next case is Gianni Gallardo v. Justin Senior, Secretary of the Florida Agency for Healthcare Administration. Mr. Bardos is here for the agency and Mr. Gowdy is back again. You're busy this week, Mr. Gowdy. You're here for Gallardo. Mr. Bardos, you may begin when you're ready. Thank you, Your Honor. May it please the Court, my name is Andy Bardos. On behalf of the Florida Agency for Healthcare Administration, this Court should reverse because although the state may recover only for the medical assistance payments that it has made in the past, it may recover those payments from the portion of a settlement that is payment for medical care, whether past or future. I thought the Florida Supreme Court already decided this issue. Why isn't this appeal moot, at least with respect to the first issue in the case? Your Honor, the appeal is not moot because the Florida Supreme Court decided this issue of Federal law as to different parties. In that case, it was Giraldo. In this case, it's Gallardo. And so the Florida Supreme Court's decision on a question of Federal law is not binding on this Court. If this Court renders a determination in favor of the state, then that will be raised judicata in Florida courts as to Gallardo. So as to Gallardo, the issue is not moot. What happens if the case is remanded back? What relief would the agency be entitled to, given this Florida Supreme Court opinion? Your Honor, the DOA proceeding, the administrative proceeding, is currently in abeyance. So once this Court is in abeyance, so the petitioner challenged the statutory allocation, that proceeding is now in abeyance. If this Court rules in favor of the Secretary, then that proceeding at DOA will proceed in accordance with this Court's determination because Florida courts will grant raised judicata effect to a Federal court judgment. So the DOA proceeding in Gallardo's case will then proceed according to the theory that this Court articulates as to the Federal preemption issues raised in this case. Indeed, as I remember, one of the two significant Supreme Court cases, I can't remember which one, whether it was Albarn or Voss, but that involved the same situation where the state court had ruled a particular way and then the Supreme Court ruled the other way. Is that not true? Do I remember correctly? I believe in North Carolina it came up through the Florida Supreme Court, but then went to the United States Supreme Court. I got you. I got you. That is a difference. But the state law is no longer in effect, is it? The state law would be in effect as to Gallardo if this Court holds as to Gallardo that it can be enforced as to Gallardo. Even though the Florida Supreme Court says this law is not in effect in the State of Florida? Yes, because that was a determination of Federal law, so that was a Federal question that the Florida Supreme Court decided. The Court decided that the state statute is preempted by the Federal Medicaid Act. If this Court decides that differently than as to Gallardo, this Court's judgment will be entitled to respect in State courts. That would be different if the Florida Supreme Court had ruled as a matter of State law. That would be a real problem for you, but because they ruled as a matter of Federal law, that's not binding on us. Is that your position? I think that might be a closer question, but I don't want to say that that also wouldn't be res judicata, because I believe that if, you know, Gallardo initiated this Federal court proceeding, if there's a judgment entered against her in a Federal court proceeding, then I believe that would be binding on her in State court, even if it were a matter of State law. But here, clearly, as a matter of Federal law, if there's a judgment against Gallardo in this case, then the State court would respect that judgment. Your Honor, I think the question in this case, the first question, as to future medicals, really requires the Court to reconcile two provisions of the Medicaid Act. And one of those provisions is the assignment provision, which we believe is the controlling provision. That's the provision that has been in the Medicaid Act since 1977. It's been there for over 40 years. That's the provision that makes no distinction between past and future medical care. It provides it as a condition of eligibility for Medicaid. Every Medicaid recipient must assign to the State the Medicaid recipient's rights to payment for medical care, without any distinction. That's not a gap to be filled. That's not an oversight or silence that the Court needs to fill with content. That is a decision by Congress that all payments for medical care, without distinction, are subject to assignment. That is the provision, the main provision, that identifies the source from which States may recover pursuant to and to effectuate the important Federal policy that the State and the public should not be liable, ultimately, for health care services that individual private parties are liable for. That is the provision that Allborn and Vosch primarily relied upon in their analyses. And I think it's telling if the Court reads the analyses in Allborn and Vosch carefully, the Court repeatedly comes back to the language of the assignment provision when it speaks of the controlling standard in determining what portion of a settlement the State can access. Dozens of times, Allborn and Vosch used terms such as medical care, medical costs, medical damages, medical expenses, without any distinction between past and future. But, I mean, let's just go to subsection H and look at the plain language of the statute. It says, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished, I mean, in past tense to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services. When I look at the plain language of the statute, that suggests to me that it entitles the State to reimbursement for past medical expenses, not future medical expenses. And that's the crux of the question before the Court, how to reconcile that provision, Your Honor, subparagraph H, with the assignment provision, which doesn't make any such distinction. And for these reasons, Your Honor, I would submit that subparagraph H does not limit the assignment that is broader than that in the assignment provision. Subparagraph H was enacted by Congress 16 years after the assignment provision was enacted. There is no indication anywhere in the legislative history or the legislative record that it was intended to curtail the rights that the assignment provision conferred. In fact, what we see, if we look at the evolution of the Medicaid Act, is a progressive strengthening or enhancement of the third-party liability provisions that entitle States to recover from third parties. Subparagraph H is somewhat unique in its focus. It's slightly different because what it provides is not that the State must provide certain things in its State plan, like the other provisions of that section do, but that the State must enact certain State laws. And so I think the focus of subparagraph H is to require States to enact State laws as a mechanism to enforce and facilitate the enforcement of the assignments that the State was receiving under the assignment provision. So clearly Congress used different language in those two provisions, but I think that it's clear from the evolution of the statute that the assignment provision is the one that has always defined the rights of States to access third-party payments and to read subparagraph H, which came into the Medicaid Act 16 years later, to then narrow that when Congress did not amend the assignment provision. It simply added subparagraph H. And so to read that as implicitly narrowing or even partially repealing the assignment provision, I think, is a leap from what the words of the statute suggest. I would argue that they can be reconciled, and I tend to agree with you for several reasons. But even if they could not be reconciled, you simply have an inconsistency because both the assignment provision and the ascertainment and reimbursement provisions, I think, clearly include future as well as past medicals. Therefore, you just have a conflict between ascertainment, reimbursement, and assignment provisions on the one hand versus H on the other hand. And if you're talking about preemption, it has to be clear and manifest, and an ambiguous inconsistency does not amount to preemption. I think that's right, Your Honor, and I think the other principle that the court can look to in reconciling those provisions is that of implied amendment or implied repeal. To impliedly repeal or impliedly amend the assignment provision, it would have to be clear and manifest that that's what Congress intended. The assignment provision, again, had been there for 16 years, saying nothing about a past versus medical distinction. And so when Congress amended the statute in 1993 to add subparagraph H, it would have to have manifested some sort of clear intent that what it was really doing was narrowing the assignment provision without amending the assignment provision, when one would think that that's what it would do if that were its intent. Clearly, that's not what it did, and that was not its intent. And I think the Supreme Court's analysis in Allborn and Bosch, again, support the view that the assignment provision is a provision that the Supreme Court consistently looked to in determining what is the control. I'd like you to address the second issue also, if you would, briefly. Yes, Your Honor. The clear and convincing evidence standard, we believe, is clearly appropriate. We really don't see much argument to the contrary in Gallardo's brief. It's apparent that under the clear and convincing evidence standard, recipients routinely are able to satisfy their burden. And I think the reason is, if we look at what the clear and convincing evidence standard consists of, this is how Florida courts have described it. The evidence must be credible. Clearly, there's no federal policy against that. The facts must be distinctly remembered by the witnesses who testify to them. The testimony must be precise and explicit. Witnesses must exhibit no confusion and ultimately there has to be a firm belief or conviction without hesitancy in the truth of the facts being asserted. There's no federal policy against any of those things. Where did the district court come up with the idea that the presumption was irrebuttable? I think the district court viewed the clear and convincing evidence standard as too high a hurdle to clear, but the district court did not consider and expressly did not consider the fact that recipients routinely clear that hurdle. We've cited 21 cases where they have. The district court thought you had conceded that issue. Right. And I think that was—I don't think we conceded that issue for this reason because the question that the district court asked is, do we need to examine the individual practices of administrative law judges? And no, we don't. We don't need to look at individual cases to see what the facts were and how ALJs were applying the standard to those facts, but that's not the same as saying that we can't look at a consistent pattern showing that petitioners routinely satisfy the standard. In fact, in our response to Gallardo's motion for summary judgment, we made that very argument. So we did not concede at the hearing that a consistent practice demonstrated by the results of these cases is irrelevant, and I believe ultimately, even apart from that, the merits have to carry the day because this is a question of the validity of a state statute under federal preemption. And finally, I would point out that even if we had conceded that, it would be appropriate to address it on appeal because the district court made an explicit finding as to what happens in practice. So the district court's conclusion hinged on its finding that in practice, the presumption is quasi-irrebuttable. And in fact, the district court used the words in practice. Now, the district court can't say that we conceded that practice is irrelevant, then base its determination on practice, and then render that determination unappealable because of a supposed concession that practice was irrelevant. So for those reasons, I would disagree with the district court. And let me ask you one hypothetical question. If we were to agree with the district court that the state is only entitled to past medical expenses, does the state agree you would only get the $35,000 that was allocated in the settlement, or do we still have to apply the formula? How would that work? I think then the proceeding would continue at DOA, and what the number is would depend on what the showing is at DOA and what the administrative law judge finds. So typically in these DOA proceedings, the evidence presented is that sort of ratio evidence so what percentage of the settlement amount of the total damages was medical or past medical, and then what percentage of the settlement amount would be past medical. So you look beyond the settlement agreement. You would apply the formula? The formula would apply, and then Gallardo would have an opportunity in the administrative proceeding to rebut the formula and then to show what portion of the settlement was payment for past medical care. All right. Thank you, Mr. Bartos. We'll hear from Mr. Gowdy. Thank you, Your Honor. May it please the Court. I want to start with the assignment provision and point out to the Court that even though that's been made the focal point of the State's argument, in Alborn itself, the Court assumed arguendo that it applies in cases such as this where the State is not actively participated in the litigation, and that's at page, if you look at the U.S. Reporter, 281, 282. It states, even assuming the provision applies in cases where the State does not actively participate in the litigation, and then it goes on to reject the Arkansas agency's argument, and we've pointed out, and we did argue this below. It was represented in the reply brief that we did not. We argued it at page 32 and 33 of our summary judgment memorandum, docket entry 12, based on Judge Polak's dissenting opinion in the Tristiani case, and we've cited in our brief to State courts that if you look at the plain language of this provision that they're relying upon, they've made the focal point of their brief, it's for the purpose of assisting in the collection, and therefore this provision would only apply in those cases where the State, and it has the right to do this, but chooses not to. It chooses to piggyback where it sues the tortfeasor itself. Yes, Judge Anderson, I see you have a question. It seems to me that's a little bit irrelevant. If there's an assignment that goes to and including future as well as past, that's a pretty good indication, and furthermore, the way I read the ascertainment and reimbursement provisions, they are also, they point just as strongly to future medicals. Right. Well, I guess I would, and I point this out. This is an alternative argument we made. Our primary argument, both in the district court on an appeal, is looking at the entire text, which is what was done in Albarn. Do you agree with me that the No, I don't agree with what you said. Okay, well, let me tell you why I think that. Okay. The ascertainment provision, which is 1396A25A. Right. That's correct. What it tells the State to do is determine the liability of a third party, and it's the liability for care and services available under the plan. Right. Now, that includes both past and future. Available now, available in the future. I disagree, because there's been no determination here whether or not Ms. Gallardo will be eligible for Medicare in the future. And actually, Your Honor, what frequently happens in these cases is because of the award in the personal injury action to the Medicaid recipient from the third party tortfeasor or the insurer, it can result in the recipient falling out of eligibility for the Medicaid. So that's quite a presumption to assume that Medicaid should get money for future medical care, because what may happen in many cases is the recipient will no longer be eligible for Medicaid and then will have to pay his or her own future medical care. And now that's been stripped away from her or him  You're saying that because of the party may in the future fall out of Medicaid. We know he's already in Medicaid. We know that. We know for the expenses that were paid in the past. In the future, it's speculative. I don't know one way or the other. I'd say that is at least ambiguous and more plausibly read to include future. Well, I guess just to point out again in Alborn, and we've pointed it out in the brief, the court mentioned future medical expenses in conjunction with other awards in a personal injury case that clearly are not medical-related at all, such as future earnings, pain and suffering, and things like that. And I think the reality is, Your Honor, that in a personal injury, I guess where I want to start with this case is this is a property rights case. Well, no, this is a preemption case. And to preempt, you have got to establish that the federal law in a manner that is clear and manifest is so inconsistent with the state law that it preempts it. And that's a very high hurdle. Mere ambiguity in the federal law gets you nowhere. Right. It's a property rights case, Your Honor, because the federal Medicaid statute, in particular the anti-lien and anti-recovery statutes, were designed to protect the property of Medicaid recipients. Because the ideal being that if Medicaid recipients get money, win the lottery, whatever, they don't have to pay back Medicaid or the federal government. And keep in mind the federal government provides most of the funding here for the past medical expenses that were paid, and they can't take from your property. And I would point the Court to the anti-lien. You can't take from the property except pursuant to the third-party liability provision. That's correct. The Supreme Court expressly held that. That's correct. I agree, except there is an exception. But what we're hearing, and in Alborn and in Voss, the Court didn't have to deal with future medical expenses, but it made it very, very clear in those cases, which involved only past medical expenses, that you are only supposed to take from the portion of this. What we're dealing with here is allocating the settlement. But you're only supposed to take from the portion of the settlement that are damages that Medicaid already paid for. It doesn't say that in either Alborn or Voss. I would agree with you it's not squarely on point, but I think if you go back and you read the facts of Alborn, where they put fewer. I know Alborn probably involved only past medicals, although that's not absolutely clear. In Voss, the Supreme Court, it seems to me, expressly contemplated future medicals. Do you agree with that? No, I don't. I don't think that in either case they. It's 1399 and 1402, I think, if I remember correctly. 1402. 1399, right column. Of the damages stemming from the injuries to the EMA suffered at birth, it is apparent that quite a substantial share must be allocated to skilled home care she will require for the rest of her life. That's right. That's $37 million that they were trying to say. That's the part they're not entitled to get. No, all that court said was they weren't entitled to get pain and suffering and lost wages. It said they were entitled to get medical care. They didn't say past or future. I would concede that neither Voss nor Alborn directly answers the question that we're here on today, which is why we're here and is why there's obviously been a division among the courts. So I'm not trying to overplay those, but I've said what I can say. We said it in the brief. I just think if you think about this, though, Your Honor, I think your premise seems to be that this person is going to be on Medicaid for the rest of their life. Well, that's speculation. And so all we can know is what Medicaid has paid in the past. If all you've got is speculation, you can't win because of preemption, and how hard it is. Right. Well, I would disagree, and I'll have to move on, because I think we've laid it out in the brief, and I think many of the other courts agree with Judge Walker. Let me tell you one more thing. I don't think H is all that clear either. H plausibly reads just like you suggest. But on the other hand, the assignment provision is from the very beginning. In other words, the assignment takes place at the very beginning when the person becomes eligible. So you're obviously talking about future medicals at that point. Right. I guess we primarily will rely on the – I don't want it to get lost here – the anti-lien provision. Let me finish my point. I'm sorry, Your Honor. H is, in effect, a subrogation right. And the assignment provision is an assignment. There's the complete consistency that you could have subrogation rights that related only to what was past, but an assignment right that was related to the future. Right. I think, just I want to be clear, we start with our analysis with the anti-lien and anti-recovery provisions, which are the general prohibition on property. You can't take a Medicaid recipient's property to pay for the medical expenses. If somebody goes and has a terrific business deal and becomes rich, Medicaid can't go take that money. And it's got the words, or to be paid. So the anti-lien provision contemplates future medical care, and none of that is modified by any of these provisions that Your Honor is relying on. Respectfully, I understand the difference of opinion. There's obviously different courts that have seen it. Well, they're modified because the Supreme Court said that that anti-lien provision has exceptions, and the exceptions are the third-party liability provisions. Right. I can't say anything more on this. If I could move on to the second point, Your Honor. I want to be clear about what we challenge. It's been misrepresented in the briefs, frankly, and what the district judge ruled. The argument at page 32 of our summary judgment motion was, and I quote, ACCA's use of an arbitrary one-size-fits-all formula to calculate the amount of past medical expenses recovered in a tort suit, which is rebuttable only by clear and convincing evidence, is preempted by Federal law. In the reply brief, I was accused of running away from the clear and convincing standard. Our case all along, from the district court and in our brief here, is that, because this is what Vaas says, what the State cannot do is what North Carolina did here, adopt an arbitrary one-size-fits-all allocation for all cases. And so the only difference How is it one-size-fits-all if it is, in fact, rebuttable? I know the district court and you are struggling with the standard that's applied. Because I think if you go to Vaas, they've just barely moved off Vaas, and that's why we did go through the whole legislative history. This is the same formula that Florida used to use when they thought they could recover whatever they wanted out of the tort settlement, even from future earnings. They haven't changed it. It's the same exact formula. So if that starts as your benchmark, that's your baseline, as the judge called it, and then they're saying you have to come in and present clear and convincing evidence to overcome it. Well, it's flawed at the beginning, and I would point the Court back to the language It's flawed because of the clear and convincing. No, it's flawed because of the formula. Because if you think about presumptions in the law in general, Your Honor, they're always based on some type of experience or empirical evidence over time. For example, at common law, before we had DNA testing and all that, it was always presumed that the husband of the mother was also the father of the child. There's some grounded in this. This formula, based on this record, has no empirical support. Could they go get that? Yes. They could go research jury verdicts, which are done in courts every day in Florida. They could do something. They just took the same formula they had before Vaas and continued to use it and just said, well, rather than making it an irrebuttable, we're going to say you've got to do clear and convincing. They're trying to evade the Vaas decision. Counsel? Yes, sir. It seems to me I have never heard and I've never read a preemption case that required empirical evidence. That is, and the Vaas case does not hold that. It holds that if you're going to have one without a procedure to rebut the presumption, then you've got to have an evidentiary basis. But it does not hold that if you have a rebuttable procedure like they do here, it does not hold you've got to have an evidentiary basis for it. I guess I disagree, Your Honor, and I'll just read from Vaas. They talk about the case-by-case judicial allocations and I would submit these are not case-by-case judicial allocations because they start with this arbitrary formula. And what Justice Kennedy said, along with five other members of the Court, if States are concerned that case-by-case judicial allocations will prove unwieldy, they may even be able to adopt ex ante administrative criteria for allocating medical and nonmedical expenses, provided that these criteria are backed by evidence suggesting that they are likely to yield reasonable results in the mine run of cases. So maybe as a general matter, in preemption cases, you don't think there needs to be evidence, and I understand that, but this is the U.S. Supreme Court saying there is. And that's not at all clear that he's talking about ex ante procedure that has a vehicle for rebuttal. I would agree that all of us would say this is not the clearest opinion. Furthermore, all of that is dicta. I mean, he's talking about what States might do, just like it's dicta when he refers to the Hawaii procedure, which does provide a clear and convincing standard. The holding of the Court, obviously, was that North Carolina's irrebuttable presumption was preempted. I think this is a pretty strong indication, though. I see him over my time. May I finish? You can continue. I've taken so much of his time, and he's done a real good job. Well, I appreciate that. But I think he ought to have at least three minutes. I vote with Judge Anderson on that. Thank you, Judge Anderson and Judge Wilson. But, Your Honor, just as far as you mentioned the Hawaii thing, the Court said without holding that those rules are necessarily compliant with the federal statute, it can be concluded they are more accurate than the procedure North Carolina has enacted. More accurate, that's all. I would concede that Florida's current mechanism, which before Voss was pretty much identical to Voss, is more accurate now. But I don't concede that it protects, and I have to start with this, because the reason I believe this is a property rights case is not a constitutional property rights case, Your Honor. It's the federal Medicaid statute that makes it clear we're going to protect the property of indigent Medicaid recipients. And so it is in federal law, the state, to get this money, they need to comply with federal law as invented by Congress. And if we were talking about somebody's business, people fall in and out of Medicaid just like they fall in and out of bankruptcy. So you think we ought to change the preemption rules because this is a Medicaid recipient? I'm saying there's really two decisions, Voss and Alborn, that give us guidance, and you must follow those. And I've read what I think supports that argument. I do want to turn to this issue about the practice and the concession below. If you look at this case, we had no discovery. And prior counsel, we had prior counsel, and then after the judgment was entered, five new lawyers showed up for the state after summary judgment. We entered Docket Entry 7 in a joint report to the court that everyone agreed these were cross motions for summary judgment, pure question of law, and there'd be no discovery. Then they cited a very confusing argument in my mind on pages, I think it's 11, of their summary judgment memorandum. The judge asked them at the hearing, what are you arguing? And he conceded, we're not arguing anything based on practice. Then there's been this big deal made that the judge somehow relied on practice in his order. Do a word search of the order. You'll find practice once on page 31. And this is all he said. Although Florida's reimbursement statute, which requires Medicaid recipients to overcome obstacle after obstacle just to keep a portion of the judgment that the recipient is already entitled to, may be rebuttable in practice, it is a quasi-irrebuttable one. He didn't make any finding based on practice. And then I would encourage the court to go and look, because if we had known pre-summary judgment that they were going to raise this, because the representation of prior counsel at the hearing was consistent with what prior counsel told us and said in the joint report before summary judgment, if we had known that, we would have done a lot of discovery. And if you go look at docket entry 51 and the exhibits attached there too, we then did a bunch of, this is after summary judgment, we did a bunch of public record requests, because we can't do discovery at that point, public record requests to the state. And they gave us a little bit of information, but they said you've got to pay for this and all that, and we were past summary judgment. So I think it's unfair to the district court, it's unfair to us, to now say we have this new argument on practice. And they cite some decisions. We have no idea. There's nothing in this record about whether there's a, you know, how many cases at DOA and, which we tried to point out once this all came up post-summary judgment, the way this formula is used most of the time is not at DOA, because most people can't afford to go to Tallahassee and litigate in front of DOA. ACCA puts on their website, you must pay the formula, that's it. No negotiation. They're different than every other lien holder. So we'd want to know how many times ACCA, in cases that don't go to DOA, is collecting based on this formula that has no, is not grounded in any empirical evidence that's been presented. And we believe that Justice Kennedy and the other five members of the court made it pretty clear there needs to be some evidence or you need to have a case-by-case determination. And what's going on at DOA, where you start with this high, this formula that could just be, you know, any number you come up with, and then being told you have to overcome that, that's not what is meant by a case-by-case determination. I think I've used more than three minutes. We have not made any arguments in support of your suggestion of mootness. Do you agree that we're not bound by the Florida Supreme Court's interpretation of the Federal Medicaid Act? I'll tell you our view on the mootness. We filed the suggestion because I was scratching my head about this and thought it was an issue the court obviously needs to know about. I would agree that what I've heard ACCA concede in their response and their reply is that this decision, well, first of all, you're not bound by the Florida Supreme Court on a question of federal law. That's easy. ACCA intends to use this decision as race judicata only in Ms. Gallardo's case. They will not use it in any other case at DOA or in the Florida courts. That's how I understand their position. And so I see where they have an argument that would have to be made in either DOA or at the First District Court of Appeal that whatever this court decides would be race judicata. And that typically race judicata is decided by the next court, not by the court issuing the judgment. So I would, though we made the suggestion because I was trying to figure this out, I would agree at this point it's not moot, but it's only going to apply to Ms. Gallardo's case. It's not going to apply to any other person, and I say that because obviously the court has to decide whether to publish or not publish. But based on ACCA, it's just going to be Ms. Gallardo. But I would say it's not moot based on that narrow ground, but I want to be clear we're not conceding, well, I guess we'll argue this when we get to DOA, if we were to lose here, what the race judicata effect is. But we're happy for the court to decide the issue. We think we made strong arguments on the statutory basis. Thank you. Thank you, Your Honor. Mr. Bartos. Thank you, Your Honor. I'll begin at the end and work backwards. The first is this question of practice, what happens in practice. Practice is everything in a preemption analysis, in an obstacle preemption analysis. So without practice, there's no way to determine whether this statute is an impediment to the accomplishment of the purposes that Congress intended. A statute cannot be an obstacle to Congress's purposes on paper. It has to be an obstacle in real life, the way that that statute operates in effect. And so without a finding of practice, there could have been no obstacle preemption. Mr. Gowdy points out that these DOA cases were cited in our papers, but that there was no, that he didn't take discovery and he believes that he was led to believe there wouldn't be fact-finding. But these are adjudications. These are not facts that require fact-finding. Every decision decided by DOA is on its website, is accessible. The entire docket is there. Every document is there. These are essentially legal authorities, and we're citing them for the proposition that when these cases are decided, the petitioners are able to carry their burden. And it looks like, counting up the number of cases that the two sides have cited, they're able to carry their burden in seven out of every nine cases. We've cited 21. They've cited six. And they haven't shown that those six would have satisfied even a lower standard. So, and then further, Mr. Gowdy says that not all cases go to DOA, but the clear and convincing evidence standard only applies once the parties get to DOA. So there's nothing about the clear and convincing evidence standard that could be found out through discovery at ACCA, or from ACCA, that is not available through DOA, because it's DOA that ultimately applies that standard. How do you address his argument that the Florida allocation, wholly aside from the fact that it can be rebutted, is simply arbitrary? It's simply what? Arbitrary. Arbitrary. First of all, Your Honor, that is an issue that, and we disagree here with Gallardo, that she did not plead and did not challenge. And it was not one, we believe, if you read the order on summary judgment, that the district court decided. And the reason is that the allocation is rebuttable. And under Vosh, it's very clear from the court's analysis in two places. It would still bother me if the initial allocation were completely arbitrary. Well, the state doesn't even have to. It would bother me and we'd have to send it back, you know, for them, for the district court to address in the first instance. But it seems to me that would concern me, I think. Well, I think in Vosh it's very clear that the state has two choices. One is to have an evidence-based standard that can be applied to ex ante, where the state knows this is how, in the general run of cases, it's going to turn out. The other is to allow the recipients an opportunity to demonstrate what portion of the settlement agreement was for medical care. And so if we choose the second option, there doesn't even have to be an allocation at all. The state could simply say we are entitled to the settlement agreement, but you're welcome to show us that only a certain portion of this settlement agreement. My point, I guess, is this. In my experience, which was 40 years ago when I practiced law, there used to be a rule of thumb that your collection in a personal injury suit was three times medicals. That's precisely what this formula is. You take the 25 percent attorney's fees out and then split it, and it comes out to be about a third. So it seems to me this is probably not arbitrary as a matter of common experience. I would agree with that. Offhand, I think it's an appropriate approximation, but I also do believe that the state could begin with a different number. It could begin with the full settlement amount, or it could begin, as North Carolina did, with 33 percent, and where Justice Kennedy wrote that the defect in this statute is that it doesn't provide an opportunity to come to an individualized determination. So I think what's clear is that the formula is actually very favorable to recipients because it brings that initial baseline down substantially. So if we were to begin in this case, for example, there were medical assistance payments for $862,000, and when you apply the formula, it comes down by over half a million dollars. So the baseline is now not $862,000, but now it's about $300,000 or $320,000. And then, in addition to that, Gallardo has the opportunity to show that even that reduced number is too much. And the converse is not true. ACCA does not have the opportunity to go to DOA and demonstrate that it is entitled to more than the formula. So the formula provides an initial reduction in favor of the recipient from the starting point, and then the recipient has an additional opportunity to address that allocation. And I see I'm over my time, so if there are any questions, I'm happy to answer those. Otherwise, we would ask that the Court reverse. Thank you, Mr. Bartos. Thank you. We have your arguments. Thank you. Thank you.